UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:26-CV-04019-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER DENYING PENDING MOTIONS |
| $17,332.00 U.S. CURRENCY, | |
| Defendant. | |

On January 23, 2026, the United States filed a complaint for forfeiture in rem of $17,332.00 in U.S. currency seized during a federal drug trafficking investigation. Doc. 1; Doc. 2 ¶ 5. Interested party, Christopher Spider, filed a pro se motion to dismiss and to show cause, Doc. 9, followed by a statement of verified claim in the property, Doc. 12. The United States resists the motion to dismiss. Docs. 8, 17, 18. While these motions were pending, Spider filed an additional motion seeking additional time to file an answer. Doc. 19. For the reasons explained below, Spider's motion to dismiss the complaint as untimely is denied, and the United States' Rule 12(h)(3) motion based on lack of statutory standing is denied. With the pending motions being denied and the forfeiture case allowed to proceed, Spider's motion to extend time to answer is denied as moot as he now has 21 days within which to answer.

1

## I.   Background[1]

On August 15, 2023, agents from the Federal Bureau of Investigation obtained consent from the residents of 154 C Avenue, Pukwana, South Dakota to search the property in connection with a federal drug trafficking investigation.  Doc. 1 ¶ 2; Doc. 2 ¶¶ 13–20.  The three residents of this property were Christopher Spider, his then-girlfriend or wife, Keri St. John, and her mother, Jacqueline Crow.  Doc. 2 ¶¶ 8, 15.  During the search, the agents located a total of $17,332.00 in the residence along with other property, including jeweler's style bags with suspected methamphetamine,[2] syringes, snort tubes, digital scales with suspected methamphetamine residue, numerous SIM cards, two cell phones, and one Prairie Tactical suppressor.  Doc. 1 ¶ 2; Doc. 2 ¶ 20.  The $17,332.00 is comprised of "$15,980.00 from a black bag in the bedroom, $970.00 from a drawer in the kitchen, [and] $382.00 from a purse in the bedroom."  Doc. 6-8.  The $17,332.00 "was deposited into a Seized Asset Deposit Fund Account, Federal Reserve Bank, in a custody holding account with the custodian being the United States Marshal Service, in the District of Nebraska, the Omaha Office, and is still currently being held in that account."  Doc. 1 ¶ 2.

At the time of the search, Spider was arrested pursuant to a federal warrant on a conspiracy to distribute a controlled substance charge.  Doc. 2 ¶ 8.  A grand jury later indicted Spider for conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841 and 846, and tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1).  See Doc. 227 in No. 4:23-cr-40100-KES-2.  Although there was a forfeiture notice in the third superseding indictment, it did not concern the property seized on August 13, 2023, from Spider's residence.  See id.  Spider

---

[1] This Court summarizes the allegations from the United States' complaint and is making no factual findings as part of this decision.

[2] The jeweler's style bags were later submitted to the South Dakota Health Laboratory for testing and confirmed to contain methamphetamine.  Doc. 2 ¶ 20.

proceeded to a jury trial on the third superseding indictment and was convicted on both counts. Doc. 2 ¶ 21. He was sentenced to 300 months on the conspiracy to distribute a controlled substance count and 84 months on the tampering with a witness count, which were to run concurrently. Id. Spider's appeal of his conviction is still pending. Id.

In September 2023, multiple letters providing Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings dated September 29, 2023, were sent to Spider at various locations, including a Post Office Box in Fort Thompson, South Dakota, his criminal defense attorney's law offices, his previous residence where the search was conducted, and the county jail where he was being held pending his trial. Doc. 6 ¶ 5; see also id. ¶ 9 (confirming receipt at the jail). The letters included, "Failure to file a claim by 11:59 PM EST on November 03, 2023 may result in the property being forfeited to the United States." See, e.g., Doc. 6-1 at 2. The FBI reports that "[n]o claim was received in our office at the FBI by a Ms. St. John, from Mr. Spider's attorney, or from Spider in 2023." Doc. 6 ¶ 6. Spider disputes this and contends that his then-partner, St. John, did submit a timely administrative claim on both of their behalf to the money in 2023. Doc. 9 at 2.

On or about August 14, 2025, the FBI sent a Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings to Spider at USP Terre Haute "because no return receipt was received back by the USPS from Minnehaha County Jail." Doc. 6 ¶¶ 8–9; Doc. 6-6. On September 4, 2025, a judicial claim on the property, the seized $17,332.00 in U.S. Currency, was filed with the FBI. Doc. 6 ¶ 10; Doc. 6-7. "The claim indicated it was made electronically on behalf of Spider, but Spider is incarcerated, and the claim was from a gmail address that appears to be a female name not belonging to Christopher Spider but indicated it was signed electronically

from Christopher Spider." Doc. 6 ¶ 10; Doc. 6-7 at 5. Under the interest in property section, the claim provided the following:

> I am going through a hardship right now. I would like my money back so I could use it to help my 2 kids and 4 grandkids since I have no way of helping them while I am in here. I could also use some of it for commissary and phone time to talk to my loved ones while I do 25 years.

Doc. 6-7 at 4. The claim did not include any documents in support of the interest and explained, "I have been in jail for 2 years, any documentation I had got thrown out." Id. On September 9, 2025, counsel for the FBI sent Spider a letter acknowledging the receipt of his claim to his place of incarceration, FCI Sandstone. Doc. 6-8. The letter indicated that the matter was being referred to the United States Attorney's Office. Id.

On December 3, 2025, the United States filed a motion to extend the time to file civil forfeiture due to delays caused by the government shutdown because "[b]ased upon the emailed claim received on September 4, 2205, the United States [sic] deadline to file a civil forfeiture complaint is December 3, 2025." Docs. 1, 2 in No. 4:25-mc-00121-KES. The Honorable Karen E. Schreier granted this motion and extended the United States' deadline for good cause. Doc. 7 in No. 4:25-mc-00121-KES. On January 15, 2026, the United States filed a second motion to extend the time to file civil forfeiture, which was also granted for good cause, and the deadline was extended to January 23, 2026. Docs. 8, 9 in No. 4:25-mc-00121-KES.

On January 23, 2026, the United States filed a complaint seeking forfeiture of the $17,332.00, pursuant to 21 U.S.C. § 881(a)(6) and (b) for violations of 21 U.S.C. §§ 841 and 846. Doc. 1. The United States filed an affidavit from Agent Adam Buiter in support of the complaint as well an application for warrant of arrest in rem of the property. Docs. 2, 3. That warrant was issued the same day. Doc. 4. On February 11, 2026, the United States issued a notice of the forfeiture proceedings, which included,

4

> [p]ursuant to Rule G(5)(a)(ii)(A) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, in order to avoid forfeiture of the defendant property, any person who asserts an interest in the defendant property must file a verified claim within 35 days after the date of this notice or the date of delivery, if personally served.

Doc. 5 at 1–2.

On February 17, 2026, Christopher Spider filed a pro se motion to dismiss and motion to show cause, which argued that this Court should dismiss this case for untimely prosecution, find that $16,590 of the property belongs to Spider, and order that property to be returned to Spider. Doc. 9 at 1. Spider claims that in 2023, following the notices, St. John filed an administrative claim in her name and his name, and that she had provided receipts of gambling proceeds, a bill of cash sale of $5,000 for a vehicle, and a signed and attested coin appraisal for the coin collection that was in the seized purse. Id. at 2. Spider alleges that "appraisal indicated that the coins in the purse had a fair market value of between $500,000 and $1,000,000." Id. Spider asserts St. John sent a copy of the filed administrative claim to Spider's criminal attorney. Id. Spider claims he received a second notice shortly after he arrived at FCI Sandstone, and that he filed an administrative claim electronically "[w]ith the help of an authorized agent," who did not have access to supporting documents submitted with the first claim. Id. at 3. Spider argues that the United States had failed to file a civil complaint within the time required; Spider requests that this Court issue a show cause order as to why any complaint would not be considered untimely or to order the matter dismissed as untimely under 18 U.S.C. § 983(a)(3)(A) and deposit the $16,590 into his Bureau of Prisons trust account. Id. at 5. It appears that, at the time Spider filed this motion, he was not aware of the complaint's filing, perhaps because he or a friend was monitoring the docket in No. 4:25-mc-00121-KES.

The United States responded to Spider's motion, arguing that prior to filing a motion to dismiss, a claimant must file a claim under oath under Federal Rule of Civil Procedure Supplemental Rule G(4)(b)(ii)(C) and G(5)(b). Doc. 8 at 3. The United States argued that without the claim, "this Court does not have standing, and accordingly, lacks subject matter jurisdiction," so Spider does not have Article III or statutory standing. Id. at 3–7. The United States contested Spider's assertion that he had filed an administrative claim in 2023 and attached a declaration from FBI Agent Angela Stoks. Id. at 6; Doc. 6. If a timely claim was filed pursuant to Supplemental Rule G(5) by March 18, 2026, the United States requested that this Court allow it 21 additional days to supplement its response, to address if Spider has standing, to contest the timeliness and merit of the claim if there is standing, to file a motion to strike if appropriate, and to supplement any other necessary matters based upon review of the claim. Doc. 8 at 1–2.

Spider then filed a verified claim before the March 18, 2026, deadline. Doc. 12. Spider asserts within his claim that $16,950 of the $17,332 is his property, specifically the $15,980 located in his and St. John's bedroom from gambling winnings at the Crow Creek Sioux Tribe Casino and the $970 in the kitchen drawer from cash he received for selling a vehicle. Id. at 1–2. Spider acknowledged that the coin purse containing rare coins does not belong to him. Id. at 1. Because Spider's claim had been filed before the deadline, this Court permitted the United States to supplement its response. Doc. 13.

The United States supplemented its response and continued to assert that Spider did not have statutory standing to bring the motion to dismiss because he did not file an administrative claim in 2023, and therefore, the motion to dismiss should be denied. Doc. 17. In the alternative, the United States requested that the motion be "converted and continued" and this Court allow the United States time to complete additional discovery in support of future motions. Id. at 3. The

United States also filed a Rule 12(h)(3) motion arguing that this Court does not have subject-matter jurisdiction. Doc. 18; Doc. 17 at 4 (citing Flute v. United States, No. 4:18-CV-04112, 2019 WL 3325353, at *3 (D.S.D. July 24, 2019)).

## II.    Legal Standards

### A. Standing

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Murthy v. Missouri, 603 U.S. 43, 56 (2024). Courts implement this limit through different justiciability doctrines, including standing and ripeness. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352–53 (2006). Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit. Raines v. Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968). The three requirements for standing are (1) an injury in fact, (2) that the injury likely was caused by the defendant, and (3) a likelihood that a favorable decision will redress the injury. FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024); Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

To satisfy Article III standing, an injury in fact "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (cleaned up and citation omitted). A "concrete" injury means "that it must be real and not abstract." All. for Hippocratic Med., 602 U.S. at 381 (citation omitted). A "particularized" injury means that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." Id. (citation omitted). The "second and third standing requirements—

7

causation and redressability—are often 'flip sides of the same coin.'" Id. at 380 (citation omitted). Causation requires a plaintiff to show an "injury likely was caused or likely will be caused by the defendant's conduct." Id. at 382. "[T]he causation requirement screens out plaintiffs who were not injured by the defendant's action." Id. at 383. For causation, "the plaintiff must show a predictable chain of events" connecting defendant's action to the asserted injury. Id. at 385. Where the defendant's action caused injury, redressability—the third element of standing— typically exists through injunctive action or an award of damages. Id. at 381.

### B. Motion to Dismiss

#### 1. Rule 12(h)(3)

The United States asserts lack of federal court subject-matter jurisdiction and has moved to dismiss under Rule 12(h)(3) of the Federal Rules of Civil Procedure. Doc. 18. Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Indeed, a federal court has the responsibility to consider the question of subject-matter jurisdiction sua sponte even if not raised by the parties and must dismiss any action where the court lacks jurisdiction. Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011).

A Rule 12(h)(3) motion to dismiss is analyzed under the same standards as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. Gates v. Black Hills Health Care Sys. (BHHCS), 997 F. Supp. 2d 1024, 1029 (D.S.D. 2014) (citing Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992)). A Rule 12(h)(3) motion differs from a Rule 12(b)(1) motion only in that it can be brought at any time, by any party or interested individual, or considered sua sponte by the court; a Rule 12(b)(1) motion by contrast must be made before any responsive pleading. See Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must

8

be made before pleading if a responsive pleading is allowed."); 5B Wright & Miller's Federal Practice & Procedure § 1350 (4th ed. 2026).

A Rule 12(b)(1) challenge to subject-matter jurisdiction can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject-matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). A facial challenge to federal jurisdiction limits the court; the court must view the allegations in the light most favorable to the plaintiffs. See Stalley v. Cath. Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007). In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In a factual challenge, the

9

court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730 (quoting Mortensen, 549 F.2d at 891).

### 2. Rule 12(b)(6)

Spider has moved to dismiss the United States' complaint as untimely under 18 U.S.C. § 983(a)(3), which this Court construes as a motion to dismiss under Rule 12(b)(6). Doc. 9; see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

While "[j]udicial economy supports dismissing a complaint for failure to satisfy the statute of limitations," Waldner v. N. Am. Truck & Trailer, Inc., 277 F.R.D. 401, 408 (D.S.D. 2011), it is

"not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008). Therefore, the plaintiff's own allegations must clearly indicate that the claims are untimely. See 5B Wright & Miller's Federal Practice and Procedure § 1357. "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Humphrey v. Eureka Gardens Pub. Facility Bd., 891 F.3d 1079, 1081 (8th Cir. 2018) (cleaned up and citation omitted).

### III.    Analysis

#### A. Government's Rule 12(h)(3) Motion

The United States has argued that Spider lacks standing to file a motion to dismiss. See Doc. 17 at 1. The United States at times argues to dismiss the motion to dismiss for lack of statutory standing and at other times to dismiss Spider's claim. See id. at 4, 7 (arguing this Court "cannot consider the merits of the motion to dismiss if it does not have subject matter jurisdiction over Spider's claim" as well as "this Court does not have subject matter jurisdiction to consider Spider's motion to dismiss relating to any claims arising out of the forfeiture notice provided in 2023"). The Rule 12(h)(3) motion contains arguments to deny the pending motion to dismiss, but the rules of civil procedure do not contemplate a motion under Rule 12(h)(3) to dismiss an opposing party's motion to dismiss. Under Rule 12(h)(3),"[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss *the action*," not a pending motion. Fed. R. Civ. P. 12(h)(3) (emphasis added).

At any rate, the United States' statutory standing argument does not implicate this Court's subject-matter jurisdiction. See Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 934 (8th Cir. 2012). "Article III standing must be decided first by the court and presents a question of

11

justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim[,]" but "[b]y contrast, statutory standing goes to the merits of the claim." Id. (first citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 92–94 (1998); then citing Bond v. United States, 564 U.S. 211, 217–20 (2011)). "The 'issue of statutory standing . . . has nothing to do with whether there is case or controversy under Article III,' and we are careful not to conflate the two." Id. (quoting Steel Co., 523 U.S. at 97). "Statutory standing is simply statutory interpretation: the question it asks is whether Congress[, or the State,] has accorded this injured plaintiff the right to sue the defendant to redress his injury." Id. (alteration in original) (quoting Graden v. Conexant Sys., 496 F.3d 291, 295 (3d Cir. 2007)). The United States initially raised issues with both Article III and statutory standing, but its supplement to its response limits its argument to Spider's lack of statutory standing. Compare Doc. 8 with Doc. 18. While the United States has framed the issue as one of standing and subject-matter jurisdiction, the arguments raised in the responses do not directly concern the justiciability of Spider's motion to dismiss and instead raise issues about whether Spider is permitted to challenge the complaint under the statutes and rules governing civil forfeiture claims. See Miller, 688 F.3d at 934.

This Court has in rem jurisdiction over this action brought by the United States under 28 U.S.C. § 1355(b), so the United States' motion pursuant to Rule 12(h)(3) is denied. See Doc. 1 at 2 ("This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1355(b)."). This Court will next consider the United States' arguments on Spider's statutory standing to bring his claim as required by Supplemental Rule G(8).

**B. Spider's Standing to Challenge the Complaint**

As a preliminary matter, Spider must demonstrate that he has standing to intervene in this action. Supp. R. G(8)(b)(i) ("A claimant who establishes standing to contest forfeiture may move

to dismiss the action under Rule 12(b)."); United States v. $244,320.00 in U.S. Currency, 295 F. Supp. 2d 1050, 1056 (S.D. Iowa 2003). "Standing in forfeiture cases has both constitutional and statutory aspects." United States v. Timley, 507 F.3d 1125, 1129 (8th Cir. 2007) (cleaned up and citation omitted).

"In a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy," which is not a rigorous burden. United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003). "To have standing, a claimant need not prove the underlying merits of the claim[,]" and instead, "[t]he claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property." Id. (quoting United States v. 7725 Unity Ave. N., 294 F.3d 954, 957 (8th Cir. 2002)). Evidence of "bare legal title . . . is sufficient to confer Article III standing to contest the forfeiture." Id.; see also $244,320.00 in U.S. Currency, 295 F. Supp. 2d at 1058–59 (discussing evidence of ownership sufficient to establish Article III standing). "Thus, an individual with a possessory interest in the property will have standing if that interest is explained," such as by including "factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." $244,320.00 in U.S. Currency, 295 F. Supp. 2d at 1060 (cleaned up and citation omitted). For example, one court found even though there could have been "more concrete evidence of ownership or possession, the fact that the currency was found in one of the claimant's bedrooms gave him constructive possession of the currency even though not present at the time of the seizure, and 'such a possessory interest is constitutionally sufficient to confer standing in forfeiture actions.'" Id. at 1061 (quoting United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 500–01 (6th Cir. 1998)).

13

By comparison, "[s]tatutory standing is satisfied by simply complying 'with the procedures and deadlines for filing a claim set out in Supplemental Rule G.'" United States v. $20,000 in U.S. Currency, 589 F. Supp. 3d 240, 249 (D.P.R. 2022) (quoting United States v. Ltr. from Alexander Hamilton to Marquis de Lafayette Dated July 21, 1780, 15 F.4th 515, 521 (1st Cir. 2021)); see also United States v. Ross, 161 F.4th 100, 111 (2d Cir. 2025) ("To establish statutory standing (that is, a cause of action), [a claimant] needed to satisfy the procedures set forth in 18 U.S.C. § 983(a) and Supp. Rule G."). The procedures in 18 U.S.C. § 983 "require a person asserting an interest in property that is the subject of a civil forfeiture complaint to file a verified claim 'not later than 30 days' after service of the government's complaint or publication of notice of the filing of that complaint." Ross, 161 F.4th at 111 (quoting 18 U.S.C. § 983(a)(4)(A)). Supplemental Rule G(5) lists requirements for filing a claim, including that the claim must be filed "by the time stated in the direct notice sent under Rule G(4)" or "if notice was published but direct notice was not sent to the claimant . . ., no later than 30 days after the final publication of newspaper notice of legal notice under Rule G(4)(a) . . . ." Supp. R. G(5)(a)(ii)(A)–(B); see also id. (C). "Rule G sets a low threshold for the filing of a claim, but provides another mechanism to address unsubstantiated claims" by "allow[ing] the government to serve special interrogatories that may be used to test the claimant's relationship to the property at any time after the claim is filed, and a claimant's failure to comply with the interrogatory rule is grounds to strike the claim." United States v. $579,475.00 in U.S. Currency, 917 F.3d 1047, 1049 (8th Cir. 2019) (citing Supp. R. G(8)(c)(i)(A)).

Spider filed a claim, pursuant to Supplemental Rule G(5), within the timelines prescribed by the Supplemental Rules and 18 U.S.C. § 983. Doc. 12. This claim asserts that Spider is the owner of $16,950, the majority of which was found in his bedroom, and alleges legal sources for this money. Id. The United States does not contest Spider's Article III standing to bring his

14

judicial claim or the claim's timeliness in its supplemental response filing. See Doc. 17. Instead, the United States argues Spider does not have statutory standing to challenge the complaint because Spider did not file an administrative claim in 2023. Id. at 7.

There is a distinction between an administrative claim and a judicial claim. See United States. v. $23,000 in U.S. Currency, 356 F.3d 157, 166 (1st Cir. 2004) (explaining that while the two forms contain "essentially the same information," they serve distinct purposes and the properly filed administrative claim did not substitute for the absence of a judicial claim); United States v. $2,857.00, 754 F.2d 208, 212 (7th Cir. 1985) ("An administrative claim does not give the claimant any rights in the judicial condemnation proceeding; it only ensures that a judicial proceeding will take place before the property is forfeited."). A party may file a valid judicial claim "sufficient to create statutory standing" while having filed a flawed, underlying administrative claim, and the standing inquiry is separate from legal issues concerning the administrative claim and arguments the parties may make based on the validity of that administrative claim. See $20,000 in U.S. Currency, 589 F. Supp. 3d at 259 (denying claimant's motion to dismiss the complaint as untimely under 18 U.S.C. § 983 based on issues with the underlying administrative claim and noting "[w]hile Morales—Vélez did file a valid claim with the Court sufficient to create statutory standing, the two claims are legally distinct and the proper filing of one does not serve to salvage a flaw in the other"). Spider's allegations show a colorable interest in the property, redressable, at least in part, by a return of the property sufficient to establish constitutional standing and his compliance with Supplemental Rule G(5) is sufficient to establish statutory standing. See $20,000 in U.S. Currency, 589 F. Supp. 3d at 249; $515,060.42 in U.S. Currency, 152 F.3d at 500–01.

The United States cites to Bacchus v. United States to argue that a claimant must file a claim contesting administrative forfeiture to have statutory standing to contest civil forfeiture, but

that case was a pro se action filed by an essentially random plaintiff who had "found notice of the property in the Wall Street Journal and file[d] this action to lay claim to it." No. 12 CV 5104, 2014 WL 2558800, at *1 (E.D.N.Y. June 6, 2014). There, the court found the "plaintiff did not file a claim with the DEA contesting the administrative forfeiture, so the United States *[had] not initiated an action* in which plaintiff possibly could have standing to assert an interest in the funds," and "[t]hus, [the] plaintiff [did] not have statutory standing." Id. at *2 (emphasis added).

Although Spider filed the motion to dismiss before his judicial claim, Spider has now filed a claim within the time prescribed by 18 U.S.C. § 983 and Supplemental Rule G sufficient to establish constitutional and statutory standing. Therefore, this Court will consider Spider's motion to dismiss the complaint under Supplemental Rule G(8)(b).

### C. Spider's Motion to Dismiss

Spider has moved to dismiss the United States' complaint as untimely filed under 18 U.S.C. § 983(a)(3), which this Court construes as a motion to dismiss under Rule 12(b)(6). Doc. 9. When the United States executes a seizure pursuant to a civil forfeiture statute, it must provide notice to interested parties. 18 U.S.C. § 983(a)(1). Subject to some exceptions not relevant to the case at hand, notice must be sent "as soon as practicable, and in no case more than 60 days after the date of the seizure." Id.

Under 18 U.S.C. § 983, "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure," which may not be filed later than the deadline in the personal notice letter, "except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure." Id. § 983(a)(2). After the filing of an administrative claim, the United States must file a complaint for forfeiture in 90 days or return the property

16

pending the filing of a complaint, except if the court extends the time to file for good cause. Id. § 983(a)(3)(A). If the United States does not file a complaint or return the property within the ninety-day period triggered by the filing of an administrative claim, or take steps in the parallel criminal case under the applicable criminal forfeiture statute, "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." Id. § 983(a)(3)(B). When the United States files a complaint for forfeiture of property,

> any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, except that such claim may be filed not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint.

Id. § 983(a)(4)(A).

Alternatively, "[i]f no person files [an administrative] claim for the property within the prescribed time period, the government may declare the property forfeited." City of Concord v. Robinson, 914 F. Supp. 2d 696, 704 (M.D.N.C. 2012) (citations omitted). "If, however, a claim is filed, then the government may seek forfeiture of the property only through judicial proceedings." Id. (cleaned up and citations omitted). Civil forfeiture proceedings incorporate by reference certain provisions of customs laws, 19 U.S.C. § 1602 *et seq.*, "insofar as they are applicable and not inconsistent with the provisions of this section." 18 U.S.C. § 981(d). 19 U.S.C. § 1621 includes a statute of limitations requiring a forfeiture of property suit to be "commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later," subject to exceptions not applicable here. See also United

17

States v. James Daniel Good Real Prop., 510 U.S. 43, 65 (1993) ("We hold that courts may not dismiss a forfeiture action filed within the 5-year statute of limitations for noncompliance with the internal timing requirements of §§ 1602–1604. The Government filed the action in this case within the 5-year statute of limitations, and that sufficed to make it timely.").

In September 2023, the United States sent notice of forfeiture to multiple addresses to contact Spider, as well as other residents of the house, which was within 60 days after the search and seizure of the $17,332 on August 15, 2023.  Doc. 6 ¶ 5; see also id. ¶ 9 (confirming receipt at the jail).  Spider claims that his then-partner, St. John, filed a claim on behalf of both of them within the time given by the notice.  Doc. 9 at 2.  The FBI reported that "[n]o claim was received in our office at the FBI by a Ms. St. John, from Mr. Spider's attorney, or from Spider in 2023."  Doc. 6 ¶ 6.  As there is no record of an administrative claim being filed, the property may have been forfeited without further legal proceedings as of November 3, 2023.  See Doc. 6-1 at 2 ("Failure to file a claim by 11:59 PM EST on November 03, 2023 *may result* in the property being forfeited to the United States." (emphasis added)).  However, as this Court understands from FBI Agent Stoks's affidavit, the FBI chose to send another letter to Spider at USP Terre Haute in August 2025, "because no return receipt was received back from the USPS from Minnehaha County Jail."  Doc. 6 ¶ 9.  Although it appears that the FBI confirmed receipt of the mail to the jail following the second notice, the confirmation of receipt does not undo the fact that the United States sent Spider what this Court understands to be a "final publication of notice of seizure" under 18 U.S.C. § 983(a)(2)(B), sent in the cases where "that [initial notice] letter is not received."

Spider, through another person, filed an administrative claim within the timeline set in the final notice letter, the receipt of which was confirmed by the U.S. Attorney's Office in a letter to Spider.  Docs. 6-7, 6-8.  Setting aside the issues with that administrative complaint, the record is

18

clear that the United States understood this 2025 administrative claim filing to trigger its 90-day clock, and when the 90-day clock had run on December 3, 2025, the United States filed for an extension of the time to file the complaint for good cause. See Doc. 2 at 1 in No. 4:25-mc-00121-KES ("Based upon the emailed claim received on September 4, 2025, the United States [sic] deadline to file a civil forfeiture complaint is December 3, 2025."). As noted above, Judge Schreier granted this motion as well as a second motion to extend for good cause, ultimately setting the deadline for the complaint on January 23, 2026. Docs. 7, 8, 9 in No. 4:25-mc-00121-KES.

Spider's motion in part is based on the mistaken understanding that no complaint had been filed as of February 7, 2026. See Doc. 9 at 4 ("Spider had a friend check the docket and as of February 7, 2026 no further filings had been posted to the docket [No. 4:25-mc-00121-KES] on this matter."). Spider did not make a due process argument in his motion to dismiss but rather argues that the United States' actions violate 18 U.S.C. § 983, and as such, this Court does not reach the United States' due process arguments in its response. See Doc. 9 at 4; Doc. 17 at 10–12. The United States did file a complaint by the deadline set by Judge Schreier on January 23, 2026, and therefore, compiled with the timeline in § 983. Doc. 1. After all, § 983 permits a court to "extend the period for filing a complaint for good cause shown." 18 U.S.C. § 983(a)(3)(A). As noted above, while this Court may dismiss "a complaint for failure to satisfy the statute of limitations," Waldner, 277 F.R.D. at 408, it is "not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Jessie, 516 F.3d at 713 n.2. The face of the complaint does not establish that an administrative claim was filed in 2023, nor does the record contain any evidence of the claim having been filed beyond Spider's assertions. The complaint was timely filed following the 2025 administrative claim within extensions of time granted by

Judge Schreier. Whether someone filed an administrative claim in 2023 is premature to decide on this record.

The United States has requested in the alternative that this Court "continue" the motion to dismiss to allow the United States to engage in discovery so that it may file a motion for summary judgment and/or a motion to strike Plaintiff's claim. See Supp. R. G(6)(a); Doc. 17 at 3–4 (requesting alternative relief).[3] As the United States highlights, a motion to strike a claim or an answer must be decided before any motion by the claimant to dismiss the action. Supp. R. G.(8)(c)(ii)(A); Doc. 17 at 4. However, the United States could have filed a motion to strike the claim, as discussed in its earlier response, see Doc. 8 at 2 (requesting in the alternative leave to "file a motion to strike if appropriate"), but instead filed a supplemental response and a Rule 12(h)(3) motion and did not serve any special interrogatories (that this Court is aware of). See Docs. 17, 18.

Under Supplemental Rule G(6), the United States "must serve special interrogatories within 21 days after the motion [to dismiss] is served." Supp. R. G(6)(a). The United States' motion to strike a claim, should it have chosen to file one, could have been "presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Supp. R. G. 8(c)(ii)(B). But "[i]f [Spider] ha[s] already established standing as to the

---

[3] Within its motion, the United States requests the following alternative relief:

> [I]f the Court concludes it cannot grant dismissal of this motion based on lack of statutory standing at this time, the motion should be converted and continued until the United States can be complete additional discovery in support of a motion for summary judgment and/or a motion to strike Plaintiff's claim.

Doc. 17 at 3.

[property], . . . then special interrogatories [are] unnecessary to determine his standing as to that currency." United States v. $154,853.00 in U.S. Currency, 744 F.3d 559, 564 (8th Cir. 2014), overruled in part on other grounds by United States v. $579,475.00 in U.S. Currency, 917 F.3d 1047 (8th Cir. 2019).

The United States and Spider may engage in discovery under Supplemental Rule G and later file a motion for summary judgment or seek trial. But this Court will not "convert[] and continue[]" Spider's motion to dismiss until the United States can file a motion to strike. Doc. 17 at 3. Spider's motion to dismiss is denied and the United States' alternative request for relief is denied in part. The parties should adhere to the procedures laid out in Supplemental Rule G. Under Supplemental Rule G(5), Spider must serve and file an answer to the complaint within 21 days given the denial of his motion to dismiss. Supp. R. G(5)(b).

### D. Spider's Motion to Extend Time to File Answer

As this decision effectively resets the deadlines in the forfeiture case in line with the procedures in Supplemental Rule G, Spider's Motion to Extend Time to File Answer to United States' filings in response to his motion to dismiss is denied as moot.

### IV.    Conclusion

For the foregoing reasons, it is hereby

ORDERED that Spider's motion to dismiss, Doc. 9, is denied. It is further

ORDERED that the United States' Rule 12(h)(3) motion, Doc. 18, is denied. It is further

ORDERED that the Spider's motion to extend time to file answer, Doc. 19, is denied as moot. It is further

ORDERED that Spider must answer the complaint within 21 days as provided by Supplemental Rule G. It is further

ORDERED that as there may have been issues with mailing, the Clerk of Court provide a copy of the complaint, Doc. 1, to Spider with a copy of this Opinion and Order.

DATED this 11th day of May, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

22